UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GUDRUN LISTE,

        Plaintiff,

v.                                        Case No. 8:13-cv-3001-JSM-AEP

CEDAR FINANCIAL/TCM GROUP USA/
TCM GROUP COMPANY; KEN JORDAN;
DON UNDERWOOD; AMIR EREZ,

        Defendants.
_____/

**DEFENDANT, CEDAR FINANCIAL, LLC'S,
MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Cedar Financial, LLC, improperly named as Cedar Financial/TCM Group USA/TCM Group Company (Cedar Financial), through counsel and under Federal Rules of Civil Procedure 12(b)(6), hereby moves to dismiss the Complaint filed by plaintiff, Gudrun Liste, for failure to state a claim upon which relief may be granted, and states:

**I.    INTRODUCTION**

On November 26, 2013, plaintiff filed this action alleging Cedar Financial violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*., the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559.72, *et seq*., and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq*., in connection with an attempt to collect a debt from her she claims she does not owe. Plaintiff is also asserting a claim for intentional infliction of emotional distress (IIED) based upon the same alleged facts. All

1

of plaintiff's claims, however, fail as a matter of law to state a claim against Cedar Financial.

***First***, plaintiff's FDCPA claim is barred by the FDCPA 1-year statute of limitations. The last alleged conduct by Cedar Financial was in February 2012, well over 1 year before plaintiff filed this action. ***Second***, plaintiff also fails to allege a timely claim under the FCCPA. To the extent plaintiff is seeking FCCPA relief based upon the February 2012 alleged conduct, such conduct does not state a claim under the FCCPA. ***Third***, plaintiff has not satisfied the pre-requisites to a private right of action under the FCRA. ***Finally***, plaintiff has not pled, nor could she plead, any set of facts to support a claim for IIED. The Court, therefore, should dismiss plaintiff's complaint as a matter of law with prejudice.

## II.     BACKGROUND AND PROCEDURAL HISTORY

As stated above, on November 26, 2013, plaintiff filed this action alleging Cedar Financial violated the FDCPA, the FCCPA, the FCRA and Florida common law during its attempts to collect a debt from her. (Dkt. 1)  Although plaintiff's complaint is lengthy, plaintiff included very few factual allegations. *See id.*

Plaintiff claims on February 28, 2011, she received 2 collection letters from Cedar Financial identifying 2 separate debts. *Id*. at ¶ 20. That same day, plaintiff's son called Cedar Financial to dispute the debts on her behalf. *Id*. at ¶ 24. Plaintiff claims a Cedar Financial collector made several misrepresentations to her *son* during that call. Thereafter, on March 4, 2011, plaintiff's son, again on her behalf, mailed a dispute letter to Cedar Financial. *Id*. at ¶ 25.

Plaintiff further claims on January 8, 2012, after having been denied a personal loan several months prior, plaintiff pulled her credit report to see Cedar Financial had at some point credit prior reported her debt but failed to note her dispute.[1]  *Id*. at ¶ 31. Then, on February 14, 2012, plaintiff claims she received a message from a Cedar Financial employee simply stating "I am with Cedar Financial.  I left messages for you before regarding a matter we have here.  You can phone me at this number, 818-936-6201.  And when you return the call, Mr. Liste use reference number 207440."  *Id*. at ¶ 32.

Cedar Financial now moves to dismiss plaintiff's complaint because as set forth in detail below, all of plaintiff's claims are either time-barred or fail as a matter of law to state a claim against Cedar Financial.

### III.     LAW AND ARGUMENT

Under Rule 12(b)(6), the defendant may seek to dismiss a complaint for "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops

---

[1] Notably, plaintiff's allegations are insufficient to establish whether Cedar Financial credit reported the debt before or after receipt of her dispute.

3

short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

While the Court may be inclined to hold the *pro se* plaintiff to a less stringent standard, "regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Taylor v. Books A Million, Inc.*, 296 F.3d 376 (5th Cir. 2002) (quoting *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)). Here, when the conclusory allegations and legal conclusions are stripped away, the remaining factual allegations fail to state any viable cause of action against Cedar Financial, and plaintiff's complaint should, therefore, be dismissed as a matter of law.

### A. *Plaintiff's FDCPA Claims Are Barred By The 1-Year SOL*.

"An action to enforce liability created by [the FDCPA] may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see also Mammen v. Bronson & Migliaccio, LLP*, 715 F.Supp.2d 1210, 1217 (M.D. Fla. 2009) (finding claims based upon conduct alleged to have occurred more than 1 year prior to filing the complaint were time-barred). Here, plaintiff has not alleged any conduct by Cedar Financial that occurred after February 14, 2012 – well over one year before plaintiff filed suit. Thus, plaintiff's FDCPA claim is clearly time-barred and fails as a matter of law.

### B. *Plaintiff's FCCPA Claims Are Time-Barred.*

Although an FCCPA action may "be commenced within 2 years after the date the alleged violation occurred," any FCCPA claims based upon Cedar Financial's alleged conduct are still time-barred. Fla. Stat. § 559.77(4). Any claims based upon the 2011 alleged conduct are plainly time-barred. The only alleged conduct to have occurred within 2 years of filing the complaint was the February 14, 2012 telephone message; however, to the extent plaintiff is attempting to assert an FCCPA claim based upon this message, such a claim fails a matter of law under the FCCPA.

Plaintiff claims the message was left "without consideration of the possibility" it could have been overheard by a third party, but plaintiff does not actually allege a third party listened to the message.[2] Moreover, as plaintiff alleges, the message itself does not state it is from a debt collector or regarding a debt, and so the message could not serve as a basis for a third-party disclosure claim. *See* Fla. Stat. § 559.72(5) (stating no person shall "[d]isclose to a person other than the debtor or her or his family information affecting the debtor's reputation . . . .").

To the extent plaintiff claims the message violates the FCCPA because it does not contain the required disclosures, plaintiff is confusing the FCCPA requirements with the FDCPA requirements. *Compare* 15 U.S.C. § 1692e(11) (requiring a debt collector to state in every "communication that the communication is from a debt collector") *with* Fla. Stat. § 559.27 (containing no such requirement); *see also Read v. MFP, Inc.*, 85 So.3d

---

[2] To the extent plaintiff claims her son overheard the message, her claim would nevertheless fail because (1) he is a family member (*see* Fla. Stat. § 559.72(5)), and (2) as she repeatedly alleges, she told Cedar Financial her son had authority to discuss the debt with them.

5

1151, 1154 (Fla. 2nd DCA 2012) (finding the FCCPA does not have the same disclosure requirements as the FDCPA).

In *Read*, the plaintiff alleged a message from the defendant requesting a return call, but failing to disclose the call was from a debt collector attempting to collect a debt violated the FCCPA. *Read*, 85 So.3d at 1154. In dismissing plaintiff's claim, the court discussed the differences between the FDCPA and the FCCPA, and noted the FCCPA does not contain the same disclosure requirements. *Id*. To be sure, the court found "[a] recorded message that does nothing more than request a return call simply does not constitute the assertion of any right [under the FCCPA], legal or not." *Id* at 1155. Thus, any claim based upon Cedar Financial's February 14, 2012 message returning a call fails as a matter of law to state a claim under the FCCPA.

C. *Plaintiff Has No Private Right Of Action Under the FCRA*.

Although plaintiff provided a laundry list of several subsections of the FCRA, her only factual allegation is that Cedar Financial credit reported a debt she did not owe and failed to note her dispute. So, the only relevant subsection plaintiff lists is 15 U.S.C. §1681s-2 requiring furnishers of information to provide accurate information to the credit bureaus and investigate disputes.[3] The FCRA's plain language, however, bars plaintiff's

---

[3] Subsection 1681s-2(a) addresses the duty of furnishers to provide accurate information and provides:
    (a) Duty of furnishers of information to provide accurate information
        (1) Prohibition
            (A) Reporting information with actual knowledge of errors
            A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.
            (B) Reporting information after notice and confirmation of errors

6

>> A person shall not furnish information relating to a consumer to any consumer reporting agency if—
>>> (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and
>>> (ii) the information is, in fact, inaccurate.
>> (C) No address requirement
>> A person who clearly and conspicuously specifies to the consumer an address for notices referred to in subparagraph (B) shall not be subject to subparagraph (A); however, nothing in subparagraph (B) shall require a person to specify such an address.
>> (D) Definition
>> For purposes of subparagraph (A), the term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information.
> (2) Duty to correct and update information
> A person who—
>> (A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and
>> (B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.
> (3) Duty to provide notice of dispute
> If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.
> …

While subsection 1681s-2(b) addresses their duties upon notice of dispute providing:

> (b) Duties of furnishers of information upon notice of dispute
>> (1) In general
>> After receiving notice pursuant to section 1681i (a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>>> (A) conduct an investigation with respect to the disputed information;
>>> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i (a)(2) of this title;
>>> (C) report the results of the investigation to the consumer reporting agency;

7

claim. Plaintiff cannot assert a claim under § 1681s-2(a) because no private right of action is available under that subsection, and plaintiff cannot state a claim under § 1681s-2(b) because she did not file a dispute with a credit reporting agency.

"As to Section 1681s–2(a), enforcement is limited to government agencies and officials." *Markovskaya v. Amer. Home Mortg. Servicing, Inc.*, 867 F.Supp.2d 340, 343 (E.D.N.Y. 2012). Specifically, sections 1681s-2(c) and (d) "limit the remedies available for violations of [§ 1681s-2(a).] More precisely, subsection (c) eliminates the availability of direct remedies to consumers for alleged violations of subsection (a). Subsection (d) provides that the requirements imposed by subsection (a) are only enforceable by government officials." *Stafford v. Cross Country Bank*, 262 F.Supp.2d 776, 782 (W.D. Ky., 2003) (citing 15 U.S.C. § 1681s-2(c), (d)). In other words, "[The FCRA] explicitly prohibits private individuals from bringing suit [under subsection (a)]." *Burrell v. DFS Services, LLC*, 753 F.Supp.2d 438, 445 (D. N.J., 2010).

---

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
    (i) modify that item of information;
    (ii) delete that item of information; or
    (iii) permanently block the reporting of that item of information.
(2) Deadline
A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i (a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information.

Further, as a prerequisite to bringing an action under § 1681s-2(b), consumers must "fil[e] a complaint with a credit rating agency (which is then required to pass the complaint on to the [furnisher]) . . . ." *Id. See also Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002) ("[Notice to a credit reporting agency] 'is necessary to trigger the furnisher's duties under Section 1681s-2(b)'"). Here, "[w]here a consumer shows only that the furnisher received notice of the dispute from the consumer, but not from a credit reporting agency, no claim is stated." *Markovskaya*, 867 F. Supp. 2d at 344. Here, plaintiff does not allege she filed a complaint with a credit reporting agency disputing the debt, and so she is prohibited from asserting a claim under § 1681s-2(b).

D. *Plaintiff Fails To Allege The Type Of "Outrageous Conduct" Required To State A Claim for IIED*.

To establish an IIED claim, plaintiff must prove "(1) [t]he wrongdoer's conduct was intentional or reckless, that is, he intended his behavior and he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Sylvester v. GE Capital Retail Bank*, 2012 WL 3522691, *3 (M.D. Fla. Aug. 14, 2012) (citations omitted). "What constitutes outrageous conduct is a question for the trial court to determine as a matter of law." *De La Campa v. Grifols Am., Inc.*, 819 So.2d 940, 943 (Fla. 3rd DCA 2002); *see also Oppenheim v. I.C. Sys., Inc.*, 695 F.Supp.2d 1303, 1309 (M.D. Fla. 2010) ("An evaluation of the claimed misconduct

must be undertaken to determine, as objectively as is possible, whether it is 'atrocious, and utterly intolerable in a civilized community.' . . . That burden falls to the judiciary –it is a matter of law, not a question of fact.") (internal citations omitted).

"Florida courts use a very high standard in evaluating whether the facts alleged are sufficiently outrageous, requiring that the conduct be 'beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sylvester*, 2012 WL 3522691 at *3. (citations omitted).  As such, "[v]alid claims for intentional infliction of emotional distress are rarely, if ever, founded solely on verbal harassment or abuse." *Borneisen v. Capital One Fin. Corp.*, 2011 WL 2730972, *7 (M.D. Fla. July 13, 2011).  Instead, "Florida federal courts have repeatedly held that repeated verbal abuse **_and_** physical contact are required to satisfy the extreme and outrageous element." *Id.*; *see also Oppenheim*, 695 F.Supp.d at 1310 (finding as a matter of law was not outrageous and stating 35-40 "telephone calls to Oppenheim's residence of a period of approximately three months were no more offensive than the 'campaign of telephonic harassment' which lasted 'for several months' in [another case].) (emphasis added).

Here, plaintiff's allegations do not as a matter of law rise to the level of outrageous conduct required to support an IIED claim.  Plaintiff's only allegations are that during one phone call a collector falsely implied he was with Cedar Financial's legal department, during one message the collector failed to say he was calling regarding a debt, and that Cedar Financial failed to note her dispute on her credit report.  Florida courts have repeatedly dismissed IIED claims based upon similar, and, even more

egregious allegations. *See e.g., Oppenheim*, 695 F.Supp.2d at 1310 (finding no outrageous conduct based upon allegations of excessive calls – sometimes 4-6 per day – and belligerent and annoying behavior); *Borneisen*, 2011 WL 2730972 at *8 (dismissing plaintiff's IIED claim based upon plaintiff's allegation the defendant improperly reported him to the police for a threatening call he made to the defendant); *Foxx v. Ocwen Loan Servicing, LLC*, 2012 WL 2048252, * 8 (11th Cir. June 6, 2012) (dismissing plaintiff's IIED claim based upon false credit reporting and other allegations); *Sylvester*, 2012 WL 3522691 at *3 (same). In the words of the Eleventh Circuit, "the tort of intentional infliction of emotional distress contemplates behavior of the rare, exceptional sort, and this case is simply not of that ilk." *Foxx*, 2012 WL 2048252 at *8.

## IV.    CONCLUSION

In sum, plaintiff fails to allege any facts to support a timely claim under the FDCPA or the FCCPA, and has failed to allege any facts whatsoever to support a claim under the FCRA or for IIED.

WHEREAS, the defendant, Cedar Financial, LLC, improperly named as Cedar Financial/TCM Group USA/TCM Group Company, respectfully requests the Court dismiss plaintiff's complaint as a matter of law, and for such other relief as this Court deems proper.

<div style="margin-left:50%">

Respectfully submitted,

/s/ Dayle M. Van Hoose
Dayle M. Van Hoose, Esq.
Florida Bar No. 0016277
Kenneth C. Grace, Esq.
Florida Bar No. 0658464

</div>

11

>Rachel A. Morris, Esq.
>Florida Bar No. 0091498
>SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
>3350 Buschwood Park Drive, Suite 195
>Tampa, Florida  33618
>Telephone:    (813) 890-2463
>Facsimile:    (866) 466-3140
>dvanhoose@sessions-law.biz
>kgrace@sessions-law.biz
>rmorris@sessions-law.biz
>
>Attorneys for Defendants,
>Cedar Financial, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of January 2014, a copy of the foregoing was sent via email and U.S. mail to:

>Gudrun Liste
>1804 Tarah Trace Drive
>Brandon, FL 33510
>gliste@aol.com

>/s/ Dayle M. Van Hoose
>Attorney