UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GUDRUN LISTE,

        Plaintiff,

v.                                                         Case No. 8:13-cv-3001-JSM-AEP

CEDAR FINANCIAL (also termed TCM
GROUP USA and TCM GROUP COMPANY);
KEN JORDAN, in his official and individual
capacity as Employee and Representative of
Cedar Financial; DON UNDERWOOD, in his
official and individual capacity as Employee
and Representative of Cedar Financial;
AMIR EREZ, in his official and individual
Capacity as the Founder, President, and Managing
Director and Representative of Cedar Financial,

        Defendants.
_____/

**DEFENDANT, CEDAR FINANCIAL, LLC'S,
MOTION TO DISMISS AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

    Defendant, Cedar Financial, LLC (Cedar Financial), through counsel and under Federal Rules of Civil Procedure 12(b)(6), hereby moves to dismiss the Amended Complaint filed by plaintiff, Gudrun Liste (plaintiff), for failure to state a claim upon which relief may be granted, and states:

    I.      **INTRODUCTION**

    On November 26, 2013, plaintiff filed this action alleging Cedar Financial violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*., the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559.72, *et seq*., and the Fair

1

Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*, in connection with an attempt to collect a debt from her she claims she does not owe. Plaintiff also asserted a claim for intentional infliction of emotional distress (IIED) based upon the same alleged facts. On March 19, 2014, this Court dismissed plaintiff's complaint for failure to state a claim upon which relief could be granted, but provided plaintiff an opportunity to file an amended complaint.

On May 2, 2014, plaintiff filed her amended complaint. But, again, plaintiff fails to state a claim against Cedar Financial. While plaintiff's amended complaint contains numerous additional legal and consclusory allegations, the few additionally alleged facts confirm Cedar Financial appropriately handled plaintiff's dispute and any remaining claims are time-barred. To be sure, plaintiff's claims "will not survive a motion to dismiss" because they are "not supported by facts constituting a legitimate claim for relief." (Dkt. 21 at p.3)

## II.     BACKGROUND AND PROCEDURAL HISTORY

As stated above, on November 26, 2013, plaintiff filed this action alleging Cedar Financial violated the FDCPA, the FCCPA, the FCRA and Florida common law during its attempts to collect a debt from her. (Dkt. 1) Although plaintiff's complaint is lengthy, plaintiff included very few factual allegations. *See id.*

Plaintiff claimed on February 28, 2011, she received 2 collection letters from Cedar Financial identifying 2 separate debts. *Id.* at ¶ 20. That same day, plaintiff's son called Cedar Financial to dispute the debts on her behalf. *Id.* at ¶ 24. Plaintiff claimed a Cedar Financial collector made several misrepresentations to her *son* during that call.

2

Thereafter, on March 4, 2011, plaintiff's son, again on her behalf, mailed a dispute letter to Cedar Financial. Id. at ¶ 25.

Plaintiff further claimed on January 8, 2012, after having been denied a personal loan several months prior, plaintiff pulled her credit report to see Cedar Financial had at some point prior reported her debt but failed to note her dispute.[1] Id. at ¶ 31. Then, on February 14, 2012, plaintiff claimed she received a message from a Cedar Financial employee simply stating "I am with Cedar Financial. I left messages for you before regarding a matter we have here. You can phone me at this number, 818-936-6201. And when you return the call, Mr. Liste use reference number 207440." Id. at ¶ 32.

On March 19, 2014, this Court dismissed plaintiff's complaint as a matter of law for failure to state a claim upon which relief could be granted. (Dkt. 21) The Court began by pointing out plaintiff's complaint constituted a "shotgun pleading," and that fact alone was "a sufficient basis to require Liste to file a more definite statement." Id. at p. 4. The Court, however, went on to address the issues raised in Cedar's motion to dismiss finding plaintiff did not have a private right of action under § 1681s-2(a) and had failed to state a claim under § 1681s-2(b) because "she did not file a dispute with the credit reporting agency." Id. at p. 5. The Court also agreed it was clear from the face of the complaint, plaintiff's FDCPA claims are time-barred. Id. at p. 6. Further, the Court found the only conduct within the FCCPA statute of limitations – the February 14, 2012 message – was "insufficient to sustain a claim under the aforementioned provisions of the

---

[1] Notably, plaintiff's allegations are insufficient to establish whether Cedar Financial credit reported the debt before or after receipt of her dispute.

3

FCCPA." *Id*. at p. 7-8.  Finally, the Court found plaintiff failed as a matter of law to state a claim for IIED.  The Court, however, permitted plaintiff an opportunity to file an amended complaint.

On May 2, 2014, plaintiff filed her amended complaint.  As stated above, plaintiff filled her amended complaint with numerous additional legal conclusions, but, buried among the legal conclusions, are very few additional facts.  (*See* Dkt. 24)  Plaintiff's only additional factual allegations are that (1) she "filed an online dispute with the two CRA Experian and TransUnion," and as a result of her dispute, the "listings were deleted," (2) Cedar Financial "obtained information from the two CRA" without a permissible purpose (arguably no more than another legal conclusion), and (3) the individual who overheard the February 14 message was her friend, Mrs. Andrea Roofe.  *Id*. at ¶¶ 34 and 35.

As set forth below, plaintiff's additional "facts" do nothing to correct the errors in plaintiff's original complaint, and actually confirm Cedar Financial properly deleted its tradeline from plaintiff's credit report upon notice of her dispute.

### III.   LAW AND ARGUMENT

Under Rule 12(b)(6), the defendant may seek to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where

4

a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

While the Court may be inclined to hold the *pro se* plaintiff to a less stringent standard, "regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Taylor v. Books A Million, Inc.*, 296 F.3d 376 (5th Cir. 2002) (quoting *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)).

Here, as noted in this Court's order, "[t]he format of the complaint constitutes a shotgun pleading." (Dkt. 21 at p.4) "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions. Consequently, in ruling on the sufficiency of a clam, the trial court must sift out the irrelevancies, a task that can be quite onerous." *Strategic Income Fund, L.L.C. v. Spear, Leads & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). Plaintiff's amended complaint does nothing to correct the shotgun nature of her pleading, and, in fact, adds to the confusion and onerousness of sorting through to find the relevant allegations. This alone is a sufficient basis for dismissing plaintiff's complaint.

Cedar Financial, however, sets forth the following additional basis for dismissing plaintiff's amended complaint with prejudice. In short, when the conclusory allegations and legal conclusions are stripped away, the remaining factual allegations fail to state any viable cause of action against Cedar Financial. The Court provided plaintiff an opportunity to correct her errors, and she has shown she cannot do so indicating a dismissal with prejudice is necessary.

### A. *Plaintiff's FDCPA Claims Are Barred By The 1-Year SOL*.

"An action to enforce liability created by [the FDCPA] may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see also Mammen v. Bronson & Migliaccio, LLP*, 715 F.Supp.2d 1210, 1217 (M.D. Fla. 2009) (finding claims based upon conduct alleged to have occurred more than 1 year prior to filing the complaint were time-barred). Like in her original complaint, plaintiff has not alleged any conduct by Cedar Financial that occurred after February 14, 2012 – well over one year before plaintiff filed suit.

To the extent plaintiff relies on her attachments containing Cedar Financial's responses to her repeated threats to sue Cedar Financial, plaintiff's claims nevertheless fail as a matter of law. Those pieces of correspondences are plainly *not* attempts to collect the debt, and only confirm plaintiff was well aware of her alleged claim within the limitations period.

### B. *Plaintiff's FCCPA Claims Are Time-Barred.*

Although an FCCPA action may "be commenced within 2 years after the date the alleged violation occurred," any FCCPA claims based upon Cedar Financial's alleged

conduct are also time-barred. Fla. Stat. § 559.77(4). Any claims based upon the 2011 alleged conduct are plainly time-barred. The only alleged conduct to have occurred within 2 years of filing the complaint was the February 14, 2012 telephone message; however, any FCCPA claim based upon this message also fails as a matter of law.

Plaintiff alleges her friend overheard the message, but plaintiff's own allegations confirm the message did not disclose it was from a debt collector or regarding a debt. The message simply cannot serve as a basis for a third-party disclosure claim or any other claim under the FCCPA. *See* Fla. Stat. § 559.72(5) (stating no person shall "[d]isclose to a person other than the debtor or her or his family information affecting the debtor's reputation . . . .").[2]

### C. *Plaintiff Fails To State A Claim Under the FCRA*.

Although plaintiff provided a laundry list of several subsections of the FCRA, the only relevant subsection is 15 U.S.C. §1681s-2 requiring furnishers of information to provide accurate information to the credit bureaus and investigate disputes.[3] As this

---

[2] To the extent plaintiff claims the message violates the FCCPA because it does not contain the required disclosures, plaintiff is confusing the FCCPA requirements with the FDCPA requirements. *Compare* 15 U.S.C. § 1692e(11) (requiring a debt collector to state in every "communication that the communication is from a debt collector") *with* Fla. Stat. § 559.27 (containing no such requirement); *see also Read v. MFP, Inc.*, 85 So.3d 1151, 1154 (Fla. 2nd DCA 2012) (finding the FCCPA does not have the same disclosure requirements as the FDCPA). In *Read*, the plaintiff alleged a message from the defendant requesting a return call, but failing to disclose the call was from a debt collector attempting to collect a debt violated the FCCPA. *Read*, 85 So.3d at 1154. In dismissing plaintiff's claim, the court discussed the differences between the FDCPA and the FCCPA, and noted the FCCPA does not contain the same disclosure requirements. *Id*. To be sure, the court found "[a] recorded message that does nothing more than request a return call simply does not constitute the assertion of any right [under the FCCPA], legal or not." *Id* at 1155. Thus, any claim based upon Cedar Financial's February 14, 2012 message returning a call fails as a matter of law to state a claim under the FCCPA.

[3] Subsection 1681s-2(a) addresses the duty of furnishers to provide accurate information and provides:
    (a) Duty of furnishers of information to provide accurate information
        (1) Prohibition

7

> (A) Reporting information with actual knowledge of errors
> A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.
> (B) Reporting information after notice and confirmation of errors
> A person shall not furnish information relating to a consumer to any consumer reporting agency if—
>> (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and
>> (ii) the information is, in fact, inaccurate.
>
> (C) No address requirement
> A person who clearly and conspicuously specifies to the consumer an address for notices referred to in subparagraph (B) shall not be subject to subparagraph (A); however, nothing in subparagraph (B) shall require a person to specify such an address.
> (D) Definition
> For purposes of subparagraph (A), the term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information.
>
> (2) Duty to correct and update information
> A person who—
>> (A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and
>> (B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.
>
> (3) Duty to provide notice of dispute
> If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.
> …

While subsection 1681s-2(b) addresses their duties upon notice of dispute providing:

> (b) Duties of furnishers of information upon notice of dispute
>> (1) In general
>> After receiving notice pursuant to section 1681i (a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>>> (A) conduct an investigation with respect to the disputed information;

Court recognized, plaintiff cannot assert a claim under § 1681s-2(a) because no private right of action is available under that subsection. Thus, the only potentially relevant subsection is § 1681s-2(b).

Plaintiff's previous claims under § 1681s-2(b) failed because she did not allege she disputed Cedar Financial's tradeline to the credit reporting bureaus. *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002) ("[Notice to a credit reporting agency] 'is necessary to trigger the furnisher's duties under Section 1681s-2(b)'"). Plaintiff attempted to correct her error by alleging she made "online disputes." However, again, plaintiff's own allegations are fatal to her claims. She goes only to allege Cedar Financial ***deleted*** its tradeline following receipt of her dispute, an action specifically permitted by the statute and in compliance with the law. 15 U.S.C. § 1681s-2(b)(1)(E)(ii).

---

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i (a)(2) of this title;
(C) report the results of the investigation to the consumer reporting agency;
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
    (i) modify that item of information;
    (ii) delete that item of information; or
    (iii) permanently block the reporting of that item of information.
(2) Deadline
A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i (a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information.

Finally, although plaintiff's allegations are quite muddled, plaintiff appears to be making a Hail Mary attempt to keep her complaint alive by alleging Cedar Financial pulled her credit report without a permissible purpose. Plaintiff, however, specifically alleges Cedar Financial is a debt collector, and debt collectors, as a matter of law, have a permissible purpose for pulling consumer credit reports.[4] Yet again, plaintiff's own allegations confirm her amended complaint should be dismissed with prejudice.

> D. *Plaintiff Fails To Allege The Type Of "Outrageous Conduct" Required To State A Claim for IIED*.

To establish an IIED claim, plaintiff must prove "(1) [t]he wrongdoer's conduct was intentional or reckless, that is, he intended his behavior and he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Sylvester v. GE Capital Retail Bank*, 2012 WL 3522691, *3 (M.D. Fla. Aug. 14, 2012) (citations omitted). "What constitutes outrageous conduct is a question for the trial court to determine as a matter of law." *De La Campa v. Grifols Am., Inc.*, 819 So.2d 940, 943 (Fla. 3rd DCA 2002); *see also Oppenheim v. I.C. Sys., Inc.*,

---

[4] The FCRA provides several permissible purposes to access a consumer's credit report, including "review or collection of an account of the consumer." *Id*. at § 1681b(a)(3)(A). Consistent with the plain language of § 1681b(a)(3)(A), courts have continually held a creditor, account servicer or collection agency accessing a consumer's credit report in connection with the review of an account or collection of a debt does so with a permissible purpose. *See Cambridge Title Co. v. Transamerica Title Ins. Co.*, 817 F.Supp. 1263, 1278 (D. Md. 1992), *aff'd* 989 F.2d 491 (4th Cir. 1993) (holding so long as user believes that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA); *Boston*, 2013 WL 5925902, at *1; *see also Norman v. Northland Grp., Inc.*, No. 12-10057, 2012 WL 5195965, at *1-2 (5th Cir. Oct. 22, 2012); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011); *Korotki v. Attorney Servs. Corp., Inc.*, 931 F.Supp. 1269, 1276 (D. Md. 1996) ("purpose in obtaining a consumer report was permissible, even though defendant merely had reason to believe plaintiff owed him a debt, and did not have conclusive proof of that fact").

695 F.Supp.2d 1303, 1309 (M.D. Fla. 2010) ("An evaluation of the claimed misconduct must be undertaken to determine, as objectively as is possible, whether it is 'atrocious, and utterly intolerable in a civilized community.' . . . That burden falls to the judiciary –it is a matter of law, not a question of fact.") (internal citations omitted).

"Florida courts use a very high standard in evaluating whether the facts alleged are sufficiently outrageous, requiring that the conduct be 'beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sylvester*, 2012 WL 3522691 at *3. (citations omitted). As such, "[v]alid claims for intentional infliction of emotional distress are rarely, if ever, founded solely on verbal harassment or abuse." *Borneisen v. Capital One Fin. Corp.*, 2011 WL 2730972, *7 (M.D. Fla. July 13, 2011). Instead, "Florida federal courts have repeatedly held that repeated verbal abuse ***and*** physical contact are required to satisfy the extreme and outrageous element." *Id.*; *see also Oppenheim*, 695 F.Supp.d at 1310 (finding as a matter of law was not outrageous and stating 35-40 "telephone calls to Oppenheim's residence of a period of approximately three months were no more offensive than the 'campaign of telephonic harassment' which lasted 'for several months' in [another case].) (emphasis added).

Again, plaintiff's allegations fail as a matter of law to rise to the level of outrageous conduct required to support an IIED claim. Plaintiff adds no new allegations to change this fact. Still, plaintiff's only allegations are that during one phone call a collector falsely implied he was with Cedar Financial's legal department, during one message the collector failed to say he was calling regarding a debt, and that Cedar

11

Financial failed to note her dispute on her credit report. Florida courts have repeatedly dismissed IIED claims based upon similar, and, even more egregious allegations. *See e.g.*, *Oppenheim*, 695 F.Supp.2d at 1310 (finding no outrageous conduct based upon allegations of excessive calls – sometimes 4-6 per day – and belligerent and annoying behavior); *Borneisen*, 2011 WL 2730972 at *8 (dismissing plaintiff's IIED claim based upon plaintiff's allegation the defendant improperly reported him to the police for a threatening call he made to the defendant); *Foxx v. Ocwen Loan Servicing, LLC*, 2012 WL 2048252, * 8 (11th Cir. June 6, 2012) (dismissing plaintiff's IIED claim based upon false credit reporting and other allegations); *Sylvester*, 2012 WL 3522691 at *3 (same). In the words of the Eleventh Circuit, "the tort of intentional infliction of emotional distress contemplates behavior of the rare, exceptional sort, and this case is simply not of that ilk." *Foxx*, 2012 WL 2048252 at *8. This Court should dismiss plaintiff's IIED claims with prejudice.

### IV.    CONCLUSION

In sum, plaintiff failed to heed the Court's warnings in its order dismissing her original complaint. To be sure, plaintiff fails to plead any additional facts to support a timely claim under the FDCPA or the FCCPA, and has failed to allege any facts whatsoever to support a claim under the FCRA or for IIED.

WHEREAS, the defendant, Cedar Financial, LLC, respectfully requests the Court dismiss plaintiff's amended complaint as a matter of law with prejudice, and for such other relief as this Court deems proper.

Respectfully submitted,

/s/ Dayle M. Van Hoose
Dayle M. Van Hoose, Esq.
Florida Bar No. 0016277
Rachel A. Morris, Esq.
Florida Bar No. 0091498
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
3350 Buschwood Park Drive, Suite 195
Tampa, Florida 33618
Telephone: (813) 890-2463
Facsimile: (866) 466-3140
dvanhoose@sessions-law.biz
rmorris@sessions-law.biz

Attorneys for Defendants,
Cedar Financial, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of June 2014, a copy of the foregoing was sent via email and U.S. mail to:

Gudrun Liste
1804 Tarah Trace Drive
Brandon, FL 33510
gliste@aol.com

/s/ Dayle M. Van Hoose
Attorney

13